## PALMER v. HOWARD COUNTY.

1. **Contract**: CONSTRUCTION: SWAMP LANDS.   Where a proposition
   for appropriating the swamp and overflowed lands of a county to aid in
   the construction of a railroad had been ratified by the voters of a county,
   and a contract in accordance therewith had been made with the com-
   pany, *held*, that the contract could not be extended to embrace a cash
   indemnity paid by the government to the county for swamp lands sold
   before selection.

2. ———: CURATIVE ACT: CONSTITUTIONAL LAW.   A subsequent act of
   the legislature, whose preamble recited that "the proceeds" of the
   swamp lands had been donated to the company, was *held* invalid to
   support its claim to the indemnity.

*Appeal from Howard Circuit Court.*

FRIDAY, DECEMBER 8.

THE plaintiff sues as the assignee of the McGregor Western
Railroad Company, and alleges that the defendant, by its deed
dated January 12, 1867, conveyed to said company certain
claims and rights then held and owned by defendant against
the United States, for swamp lands previously sold by the
United States, within said county of Howard; that by said
deed of conveyance the said company became the owners of
this cash indemnity against the United States, for the purpose
of aiding in constructing a railway into said county; that on
January 25, 1875, there was paid over to defendant the sum of
$3,512, cash indemnity on the lands contained in said deed
from the defendant to said company, and that defendant
refuses to pay the same to the plaintiff, although due demand
therefor has been made.   The answer denies the indebtedness,
and alleges that the said conveyance of the cash indemnity
was made by the chairman and clerk of the board of super-
visors, without any authority from the board, and without
authority of law, and is therefore void.

There was trial by the court, judgment for defendant for
costs, and plaintiff appeals.

*George E. Clarke,* for appellant.

*H. T. Reed,* for appellee.

ROTHROCK, J.—I.   It appears from the record of the board of supervisors introduced in evidence that in September, 1863, certain resolutions were passed appropriating to the McGregor Western Railway Company the swamp and overflowed lands of the county, donated and granted by act of Congress.   This appropriation was upon certain conditions as to the building of a railroad in said county.   Said resolutions further provided that the question of appropriating said lands be submitted to the voters of Howard county, at the general election in October, 1863, and prescribed the following form of ballot: "For donating swamp and overflowed lands to the McGregor Western Railway Company—yes.   For donating swamp and overflowed lands to the McGregor Western Railway Company—no."

1. CONTRACT: construction: swamp lands.

A contract was entered into by the chairman of the board of supervisors with said company, binding the county to convey to said company all of its "right and title in and to the swamp or overflowed lands belonging to and owned by said county." The proposition and contract were ratified at the election aforesaid.   The railroad company failed to build the road within the time stipulated, and an election was held on the proposition to extend the time for the completion of the road, which was carried.

In all the resolutions of the board, and in the contract with the company, in the proclamations for the elections, and in everything pertaining to the question down to the January session of the board in 1867, no mention is made of the claims against the United States for the swamp and overflowed lands which had been sold before the same were selected as swamp lands.   The whole proceedings relate to lands to which the county was entitled, and not to cash indemnity.   At said January session, 1867, the board adopted a resolution, ordering the chairman and clerk of the board to "convey to the railroad company by quit claim deed, all the swamp and overflowed

lands to which the county then had title." On the same day, or about that time, a deed was made which conveyed not only nearly 7,000 acres of swamp lands then belonging to 'the county, but also conveying all the right the county had to cash indemnity for lands sold before selection. This deed was approved by the board of supervisors, and an agent was appointed by the board to prosecute the collection of said claim for the benefit of the railroad company, to be, however, without expense to the county.

The assignment or conveyance of the cash indemnity claim was clearly in excess of the power conferred by law on the board of supervisors. It was nowhere contemplated by the previous resolutions or contracts of the board, and no such proposition or contract was submitted to the electors for adoption. Sec. 988 of the Revision of 1860, under which the original contract with the company was made, provides that before any such contract shall be of any validity the same shall be submitted to a vote of the people. It was a donation of the swamp lands owned by the county which was ratified by a vote of the people, and nothing more; and as the contract was of no validity without a vote of the people, it cannot be extended and made to embrace more than the original contract provided for.

II. It is urged upon the part of appellant that whatever defects there may have been in the proceedings of the board of supervisors, they have been cured by Chapter 37 of the Acts of the Twelfth General Assembly. That Act in its preamble recites that it was determined by a large majority of the votes cast by the people that the swamp lands *and the proceeds thereof* of said county should be donated to the said railway company, and it enacts that the deed executed by the chairman and clerk of the board of supervisors shall be held valid, legal and effectual to convey to said company the property, rights and interests which the same purports to convey.

If the statement contained in the preamble of the act in question, that it was determined by a majority of the votes cast by the people that the swamp lands *and the proceeds*

*thereof* should be donated to the railway company, was true in point of fact, we have no doubt that, under the repeated decisions of this court, this would be a valid curative act. See *Dubuque Female College v. District Township, etc.*, 13 Iowa, 555; *Newman v. Samuels*, 17 Id., 528; *Jones v. Berkshire*, 15 Id., 248; *State v. Squires*, 26 Id., 340, and *Bennett v. Fisher*, Id., 497.

But we have found from the records and proceedings of the board that no such contract was submitted to a vote of the people; it was the swamp land which was owned by the county, and that only, which was by vote of the people donated to the railroad company, and the board of supervisors had no power to transfer a cash claim owned by the county to the railroad company. In *Bennett v. Fisher*, *supra*, it is said: "The interests of justice, and the general good of the community, frequently require and sanction such legislation, although it should be borne in mind by the legislator that such exercises of power can only be defended upon principle and sustained in law when they are not directed against the vested rights of particular individuals or classes, but have their origin in a just regard for the public welfare."

"Questions of this character very much depend upon the peculiar circumstances of the cases in which the legislative power is exercised. There may be retrospective legislation so palpably destructive of private and vested rights that it is the duty of the court to declare it to be inoperative."

This Act in question does not cure a defect in the proceedings of the board, or in the submission of the question to a vote of the people. It attempts to make valid a deed or assignment of the board of supervisors, by which some $3,500 of the money belonging to Howard county is donated to the railway company, without any authority of law. It could only be done by a vote of the people, and in the absence of such vote it was a most palpable violation of the vested rights of the county and its tax payers.

AFFIRMED.